H.D., John Doss, and June Doss,
Appellants–Plaintiffs,

v.

BHC MEADOWS HOSPITAL, INC.,
d/b/a Bloomington Meadows Hos-
pital, Appellee–Defendant.

No. 53A04–0707–CV–410.

Court of Appeals of Indiana.

April 10, 2008.

Rehearing Denied June 10, 2008.

Betsy K. Greene, Greene & Schultz, Bloomington, IN, Scott Weathers, The Weathers Law Office, Indianapolis, IN, Attorneys for Appellants.

Susan E. Cline, Julia Blackwell Gelinas, Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, H.D., John Doss (Father), and June Doss (Mother) (collectively, the Dosses), appeal the trial court's dismissal of their claims against Appellee–Defendant, BHC Meadows Hospital Inc. d/b/a Bloomington Meadows Hospital (Meadows), for lack of subject matter jurisdiction.[1]

We reverse and remand.

### ISSUE

The Dosses raise one issue for our review, which we restate as: Whether the Indiana Medical Malpractice Act applies to the Dosses' claims against Meadows.

1. Oral argument was held on February 26, 2008, at Wabash College, Crawfordsville, IN.

### FACTS AND PROCEDURAL HISTORY

On November 17, 2003, Mother and Father found what they believed to be a suicide note authored by their fourteen-year-old daughter, H.D. As a result, arrangements were made for H.D. to be counseled the next day at her school in eastern Illinois. H.D.'s school counselor recommended Meadows, an adolescent psychiatric hospital, to H.D. and her parents.

That evening, Meadows provided an assessment to the Dosses, performed by a psychiatric nurse in Terre Haute, Indiana. After meeting individually with H.D., Mother, and Father, the psychiatric nurse recommended that H.D. be admitted to the Meadows. The Dosses resisted initially because of concerns for H.D.'s reputation at school, and concerns for their own confidentiality because they were both school-teachers in the school system where H.D. attended. However, they agreed to admit H.D. after they were assured that the hospitalization would be private and that it would never be shared with the school. When signing a confidentiality agreement, the Dosses specifically indicated that they did not wish for information concerning H.D.'s hospitalization to be shared with her school counselor or the school.

Later that same evening, H.D. was admitted to Meadows. On November 19th, she began receiving counseling and other services at Meadows. H.D.'s therapist at Meadows, having not reviewed the form which noted the specific agreement that H.D.'s school counselor not be contacted, sent a fax to H.D.'s school directed to her counselor. The message was labeled "re: [H.D.'s first name] D.," and stated:

Thanks for referral. Addressing issues of depressional stress.

We thank Wabash College for their hospitality and counsel for their excellent advocacy.

Doing well, withdrawn and anxious @ times. Please call @ 812–961–2476 to discuss issues.

Thanks again.

(Appellant's Appendix p. 99). The fax machine at H.D.'s school was located in the general secretarial pool in the main office of the high school and students also worked in this area.

When H.D.'s school counselor arrived at the school the next day, teachers already knew that H.D. had been hospitalized and that she had been diagnosed with depression. When H.D. returned to school after Thanksgiving break, her school counselor asked about her well-being and about Meadows. Later that day, her basketball coach asked her when she was going to tell her teammates about her hospitalization. H.D. became upset and distraught because people knew that she had been hospitalized for psychiatric reasons and again she began demonstrating suicidal behavior.

H.D. was re-assessed by the psychiatric nurse who noted her depression caused by her perception that everyone at her school knew she had been hospitalized. A release of information form, which again precluded H.D.'s school from being contacted, was completed at the time of this assessment. However, on January 20, 2004, two additional letters were sent to H.D.'s school counselor regarding H.D.'s hospitalization at the Meadows. The letters were satisfaction surveys sent by Meadows' CEO.

On November 8, 2005, the Dosses filed a Complaint in Indiana seeking compensation and punitive damages for invasion of privacy, negligent infliction of emotional distress, intentional/reckless infliction of emotional distress, and violations of the Illinois Mental Health and Developmental Disabilities Confidentiality Act. Meadows responded by moving to dismiss, alleging that the Dosses' claims were subject to the Indiana Medical Malpractice Act, which requires submission of the matter to a medical review panel prior to filing an action in an Indiana court. The trial court denied Meadows' Motion to Dismiss. However, on June 6, 2007, Meadows filed a renewed Motion to Dismiss pursuant to Indiana Trial Rule 12(B)(1), again arguing that the Indiana Medical Malpractice Act applied to the Dosses' claims. On July 9, 2007, the trial court granted this motion and ordered dismissal of the Dosses' action.

The Dosses now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION
### I. Standard of Review

In reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to T.R. 12(B)(1), the relevant question is whether the type of claim presented falls within the general scope of the authority conferred upon the court by constitution or statute. *Community Hosp. v. Avant,* 790 N.E.2d 585, 586 (Ind.Ct.App. 2003). A motion to dismiss for lack of subject matter jurisdiction presents a threshold question with respect to a court's power to act. *Id.* The standard of appellate review of a trial court's grant or denial of a motion to dismiss pursuant to T.R. 12(B)(1) is a function of what occurred in the trial court and is dependent upon: (i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a paper record. *Id.* If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law and no deference is afforded to the trial court's conclusion. *Id.*

If the facts before the trial court are in dispute, then appellate review focuses on whether the trial court conducted an

evidentiary hearing. *Kuester v. Inman,* 758 N.E.2d 96, 100 (Ind.Ct.App.2001). Where the trial court conducts an evidentiary hearing, we give its factual findings and judgment deference. *Id.* Where the facts are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing, then no deference is afforded to the trial court's factual findings or judgment because under those circumstances, a court of review is "in as good a position" to determine whether the trial court has subject matter jurisdiction. *Id.* (quoting *MHC Surgical Ctr. Assocs., Inc. v. State Office of Medicaid Policy & Planning,* 699 N.E.2d 306, 308 (Ind.Ct. App.1998)). Here, the trial court did not hold an evidentiary hearing, but rather relied upon paper exhibits to determine factual issues relevant to jurisdiction.

## II. *Medical Malpractice and Subject Matter Jurisdiction*

 Before a medical malpractice action may be commenced in any court of this state, the Medical Malpractice Act requires that a proposed complaint be presented to a medical review panel and an opinion rendered by the panel. Ind.Code § 34–18–8–4; *Harts v. Caylor–Nickel Hosp., Inc.,* 553 N.E.2d 874, 877 (Ind.Ct. App.1990), *reh'g denied, trans. denied.* Essentially, the Act grants subject matter jurisdiction over medical malpractice actions first to the medical review panel, and then to the trial court. *Putnam County Hosp. v. Sells,* 619 N.E.2d 968, 970 (Ind.Ct. App.1993).

Our legislature has defined "malpractice" as a "tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." I.C. § 34–18–2–18. Further,

"health care" is defined as "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." I.C. § 34–18–2–13. A "patient" is defined as:

> an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider. Derivative claims include the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims.

I.C. § 34–18–2–22. A "tort" is a "legal wrong, breach of duty, or negligent or unlawful act or omission proximately causing injury or damage to another."[2] I.C. § 34–18–2–28.

Meadows contends that the fax sent by its therapist to H.D.'s school on November 19, 2003, and the follow up letters sent in January of 2004, were merely for health care purposes. However, the Dosses claim that the communications from the Meadows to H.D.'s school were for the purpose of generating business, and thus do not fall under the Medical Malpractice Act. There are no other disputed facts necessary to a determination of whether the trial had subject matter jurisdiction. We therefore review the evidence *de novo* to determine the nature or purpose of the communications from Meadows to H.D.'s school.

---

**2.** "Health care provider" is defined by I.C. § 34–18–2–14. It is undisputed that Meadows Hospital is a qualifying "health care provider."

Reviewing the exhibits filed by the parties, we find that the November 19, 2003, fax was for the dual purpose of providing health care or professional services for H.D., and for marketing or customer satisfaction. Having reviewed the surveys sent by the Meadow's CEO on January 20, 2004, it is clear that they were sent only for the business purposes of marketing or customer satisfaction, and were not health care or professional services provided to H.D. or her family.

Since we have found that the surveys sent by the Meadows' CEO on January 20, 2004, were not health care or professional services provided to a patient, those two communications cannot constitute "malpractice." *See* I.C. § 34–18–2–18. As such, the Dosses were not required to first submit their claims for damages caused by these two communications to a medical review panel prior to filing their Complaint with an Indiana trial court, and the trial court improperly dismissed their claims for this reason. However, the fax sent by Meadows' therapist was in part health care or professional services provided to a patient, and the Dosses' claims in regard to that action deserve further analysis to determine if they can be considered by an Indiana court without first being considered by a medical review panel.

Meadows argues that "[t]he reasonableness of [the t]herapist's decision to communicate with [the school c]ounselor and share confidential information during the course of [the t]herapist's treatment constitutes the quintessential exercise of judgment in rendering professional services in caring for [H.D.] and her serious, suicidal ideation." (Appellee's Brief pp. 12–13). We would agree with this statement on its face; however, what has been presented by the Dosses is much more than a confidential communication between a therapist and a counselor. It is undisputed that the therapist sent private, confidential information to the fax machine of a high school without knowing who had access to the machine. Indeed, we have doubts as to whether the Dosses would have experienced any injury had the therapist directly and privately communicated with H.D.'s school counselor who was already aware of her suicide note, although such communication would still have been in contravention of the Dosses' explicit wishes. For this reason, we conclude that the more appropriate question to answer is whether a health care provider's negligent or reckless dissemination of a patient's confidential information to members of the general public comes within the purview of the Medical Malpractice Act.

While we have not yet answered this question in Indiana, previous case law guides us as to the boundaries of the Medical Malpractice Act. In *Winona Memorial Foundation. of Indianapolis v. Lomax*, 465 N.E.2d 731, 733 (Ind.Ct.App.1984), *reh'g denied*, we considered an appeal of a trial court's determination that a patient's claim against a health care provider stemming from a slip and fall caused by a protruding floor board was not a medical malpractice claim required to be sent to a medical review panel. Upon reviewing the Medical Malpractice Act, we concluded that it was:

ambiguous and unclear in meaning as to whether a claim for premises liability by a patient against a qualified health care provider is within the scope of the Act. As such we must seek the intention of the legislature in passing the Act in order to give it proper construction to accomplish the end it was enacted to attain.

*Id.* at 737–38. We reviewed the history behind the passage of the Medical Malpractice Act, described by our supreme court in *Johnson v. St. Vincent Hosp.*, 273

Ind. 374, 404 N.E.2d 585 (Ind.1980). *Id.* at 738. We stated that it was clear from reading a passage in Johnson that the Medical Malpractice Act was the legislative response to the crisis in the availability of medical malpractice insurance, which, in turn, was threatening the availability of health care services to the public. *Id.* at 739. "The supreme court's review of the historical background of the Act does not indicate the legislature was aware of any difficulties of health care providers in obtaining general liability insurance coverage for ordinary non-medical accidents on their premises." *Id.* at 739.

Additionally, we analyzed the design and procedures of the Act, especially that of submitting the complaint to a medical review panel for the purpose of expressing an expert opinion. *Id.* We explained that, "such matters as the maintenance of reasonably safe premises are within the common knowledge and experience of the average person. Health care providers, who must make up the medical review panel under [the Act] are no more qualified as experts on such matters than the average juror." *Id.* at 740. We concluded that, "[g]iven these considerations, it seems clear that the legislature did not intend a premises liability claim such as Lomax's to come within the coverage of the Act." *Id.*

In *Collins v. Thakkar*, 552 N.E.2d 507, 510–511 (Ind.Ct.App.1990), we explained relevant principles pertaining to the Medical Malpractice Act, by stating:

> The text of the Act itself thus leads one to conclude that the General Assembly intended to exclude from the legislation's purview conduct of a provider unrelated to the promotion of a patient's

health or the provider's exercise of professional expertise, skill or judgment.

> \* \* \*

> The legislature's establishment of a medical review panel, the sole purpose of which is to provide an expert determination on the question of whether a provider complied with the appropriate standard of care, suggests that the scope of the Act is likewise confined to actions premised upon the exercise of profession judgment.

Moreover, we have repeatedly held that when plaintiffs articulate claims for ordinary negligence, unrelated to the provision of medical care or treatment, those claims do not fall within the scope of the Medical Malpractice Act. *Madison Ctr., Inc. v. R.R.K.*, 853 N.E.2d 1286, 1288 (Ind.Ct. App.2006); *Sells*, 619 N.E.2d at 970; *Harts*, 553 N.E.2d at 879; *Lomax*, 465 N.E.2d at 739.

We fail to see why the therapist's act of faxing a patient's confidential information to a fax machine located in a school office without taking precautions to ensure that the materials are discreetly received by the intended recipient would necessitate consideration by a medical review panel. For example, the Dosses have alleged that the therapist's act constitutes an invasion of privacy which includes the sub-tort "public disclosure of private facts," a cause of action that has been recognized in most states. *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 684–85 (Ind. 1997).[3] "According to the Second Restatement, a person is subject to liability for public disclosure of private facts if the person (1) gives 'publicity', (2) to a matter

---

**3.** We acknowledge that our supreme court, by plurality opinion, ultimately affirmed an award of summary judgment to the defendant in *Doe*, with two Justices recognizing the considerable obstacles to torts involving disclosure of truthful but private facts in Indiana. *Id.* at 693. However, we conclude that such a disposition does not detract from our determination today that the trial court has subject matter jurisdiction over the Dosses' claims.

that (a) concerns the 'private life' of another; (b) would be 'highly offensive' to a reasonable person; and (c) is not of legitimate public concern." *Id.* at 692. These are elements that an average juror is equally equipped to consider as a panel of medical experts.

We must note that potentially evidence from Meadows tending to show that the Dosses' claims are the type covered by a medical malpractice insurance policy would be relevant to a determination of subject matter jurisdiction considering the history behind the Medical Malpractice Act. *See Lomax,* 465 N.E.2d at 739. However, based on the record before us, we cannot determine whether the claims alleged by the Dosses would be covered by the Meadows' malpractice insurance policy rather than a general insurance policy, and we refuse to speculate. That being said, the Dosses have articulated claims of ordinary negligence and similar claims; we are particularly persuaded that an average juror is well equipped to consider those claims. For these reasons, we conclude that the trial court erred when it dismissed the Dosses' claims for lack of subject matter jurisdiction.

### CONCLUSION

Based on the foregoing, we conclude that the trial court erred when it dismissed the Dosses' claims for lack of subject matter jurisdiction.

Reversed and remanded.

KIRSCH, J., and MAY, J., concur.