JACOBSVILLE DEVELOPERS EAST,
LLC, Appellant/Plaintiff,

v.

WARRICK COUNTY, Indiana by and
through the BOARD OF COMMIS-
SIONERS OF WARRICK COUNTY,
Indiana and the Warrick County Area
Planning Commission, Appellees/De-
fendants.

No. 87A01–0809–CV–420.

Court of Appeals of Indiana.

May 5, 2009.

James D. Johnson, Krista B. Lockyear, Rudolph, Fine, Porter & Johnson, LLP, Evansville, IN, Attorneys for Appellant.

Maurice E. Doll, Morrie Doll & Associates, LLC, Newburgh, IN, Attorney for Appellee Warrick County Area Planning Comm'n.

Shawn M. Sullivan, Terrell, Baugh, Salmon & Born, LLP, Evansville, IN, Attorney for Appellee Board of Comm'rs of Warrick County.

## OPINION

CRONE, Judge.

### Case Summary

Jacobsville Developers East, LLC ("JDE"), appeals the trial court's dismissal of its complaint for inverse condemnation against the Warrick County Board of Commissioners ("County") and the Warrick County Area Planning Commission ("APC"). We affirm.

### Issue

The dispositive issue is whether the trial court erred in dismissing JDE's inverse condemnation action for lack of subject matter jurisdiction.

### Facts and Procedural History[1]

JDE owns real property in Warrick County. The County's Thoroughfare Plan

---

1. We heard oral argument on April 16, 2009, and we commend the parties for their presen- tations.

had designated that, as a part of the County's long-range transportation plan, a public road be placed across a portion of JDE's property. In 2007, JDE filed an application with the APC seeking approval of a two-lot subdivision. Lot 2 of the subdivision consists of approximately four acres, upon which JDE planned to construct a physicians' center.[2] JDE's proposed plat designated a fifty-foot strip of land adjoining its northern boundary of Lot 2 as a building setback. The County Subdivision Control Ordinance ("Ordinance"), however, required that the fifty-foot strip be designated and dedicated as a right-of-way:

> The Street and Highway design shall conform both in width and alignment to any Comprehensive Plan or Thoroughfare Plan of Streets and Highways approved and/or adopted by any participating city or town or the County as indicated in the Thoroughfare Plan being a part of the Long Range Transportation Plan. Right-of-way for any such street or highway indicated on said Thoroughfare Plan *shall be dedicated.*

Appellant's App. at 64 (quoting Subdivision Control Ordinance, Article IV § 2(1)) (emphasis added).

On July 11, 2007, following a public hearing, the APC voted to deny JDE's application on the grounds that the proposed plat failed to comply with the Ordinance's dedication provision. On August 10, 2007, JDE filed a certiorari action in Warrick Circuit Court, alleging that the required dedication was not reasonably or rationally related to the impact of the proposed subdivision and that the denial of the proposed plat constituted an unconsti-

tutional exaction without just compensation. On September 5, 2007, JDE's attorney sent a letter to the County's attorney stating that the County must be named as a party to the certiorari action because it, not the APC, possessed the power to amend the Ordinance. Appellant's App. at 155. However, the County was never made a party to this action. On October 9, 2007, JDE and the APC agreed to dismiss the certiorari action.

On October 10, 2007, JDE filed a second application with the APC for approval of a plat that included a dedicated right-of-way along the northern boundary of Lot 2. During the hearing on the second application, JDE objected to including the dedicated right-of-way, but indicated that it needed to proceed with the plat approval process to avoid increased economic losses. On that date, the APC voted unanimously to approve JDE's second application.

On December 20, 2007, JDE filed a three-count inverse condemnation action against the County and the APC, alleging that the Ordinance's dedication requirement constituted a "taking" without just compensation.[3] On February 18, 2008, the County and the APC filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Indiana Trial Rule 12(B)(1) and for failure to state a claim upon which relief may be granted pursuant to Trial Rule 12(B)(6). On July 21, 2008, the trial court heard arguments on the motion. On August 14, 2008, the trial court granted the motion and dismissed all three counts. The trial court did not enter specific findings. This appeal ensued. Additional facts will be provided as necessary.

---

2. The disposition regarding Lot 1 is not at issue in this case.

3. Count I was a statutory takings claim, Count II was a federal takings claim, and Count III claimed an unconstitutional exaction.

### Discussion and Decision

■■■ JDE asserts that the trial court erred in dismissing its inverse condemnation action for lack of subject matter jurisdiction. Our standard of review of a trial court's ruling on a Trial Rule 12(B)(1) motion "is a function of what occurred in the trial court and is dependent upon: (i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a paper record." *H.D. v. BHC Meadows Hosp.,* 884 N.E.2d 849, 852 (Ind.Ct.App.2008), *trans. denied.* If the facts before the trial court are undisputed, then the question of subject matter jurisdiction is purely one of law, and we give no deference to the trial court's conclusion. *Id.* If a factual dispute exists and the trial court conducts an evidentiary hearing, we defer to its findings and judgment. *Id.* at 852–53. If the trial court does not conduct a hearing and make such findings, then we are in as good a position as the trial court to determine the issue of subject matter jurisdiction and therefore will not defer to its judgment. *Id.* One basis upon which a trial court may lack subject matter jurisdiction is a party's failure to exhaust its administrative remedies. *Austin Lakes Joint Venture v. Avon Utils., Inc.,* 648 N.E.2d 641, 644 (Ind.1995).

Here, the trial court dismissed JDE's complaint for lack of subject matter jurisdiction based on JDE's failure to exhaust its administrative remedies. Because the facts are undisputed and the trial court did not enter findings, we review the subject matter jurisdiction issue de novo. JDE asserts that it exhausted the administrative remedies available to it by obtaining a final decision *within* the agency and, as such, was not required to seek and complete the certiorari review process before initiating its inverse condemnation action.

■■■ In Indiana, if a party is required by the Administrative Orders and Procedures Act ("AOPA") to exhaust its administrative remedies before an agency before obtaining judicial review of the agency decision, courts are completely ousted of subject matter jurisdiction to hear the case at all. *Id.* at 644; *see also* Ind.Code § 4–21.5–5–4 ("A person may file a petition for judicial review under this chapter only after exhausting all administrative remedies within the authorized agencies"). "Even when neither statute nor agency rule specifically mandates exhaustion as a prerequisite to judicial review, the general rule is that a party is not entitled to judicial relief for an alleged or threatened injury until the prescribed administrative remedy has been exhausted." *Austin Lakes,* 648 N.E.2d at 644. The purpose of the exhaustion rule is to defer judicial review until controversies have been channeled through the complete administrative process, providing the parties and courts the benefit of the agency's expertise and providing the agency an opportunity to correct its own errors and to compile a record adequate for any subsequent judicial review. *Id.*

■■■ Here, JDE initially filed an application for plat approval with the APC pursuant to Indiana Code Section 36–7–4–703. Next, when the APC denied the application, JDE sought certiorari review. *See* Ind.Code § 36–7–4–708 (stating APC's primary disapproval of plat is a final decision reviewable by writ of certiorari pursuant to Ind.Code § 36–7–4–1016). Then, JDE sent a letter to the County stating its desire to add the County as a party because only the County possessed authority to modify the Ordinance. Finally, before the certiorari process was complete, JDE dismissed the action and went back to the APC with a new plat application.

■ JDE claims that it was not required to fully pursue the certiorari process because the certiorari court lacked authority to provide the kind of remedy JDE sought.[4] *See LHT Capital, LLC v. Indiana Horse Racing Comm'n,* 895 N.E.2d 124, 126 (Ind.Ct.App.2008) (stating futility exception to exhaustion requirement requires showing that exercise of obtaining review would be impossible or fruitless or that the agency would have been *powerless* to effect a remedy), *trans. denied* (2009). Indiana Code Section 36–7–4–1009 places limits upon a certiorari court's remedies. Pursuant to the statute, the certiorari court may consider supplementary evidence and pass on the legality of the area plan commission's action by affirming, modifying, or reversing the action. As such, the certiorari court lacks authority to impose a compensatory remedy. *See Daniels v. Area Plan Comm'n of Allen County,* 306 F.3d 445, 455 (7th Cir. 2002) (stating that an inverse condemnation claimant need only exhaust administrative procedures for obtaining *compensation* before bringing their takings claim). In *Daniels,* the court addressed the issue of whether certiorari review is a required component of exhaustion of remedies in takings cases. The court concluded that if the remedy sought was monetary, and the certiorari court could not provide that remedy, then exhaustion would not require a decision from the certiorari court. 306 F.3d at 455; *see also Williamson County*

*Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (stating that litigants bringing takings claim need only exhaust administrative procedures for obtaining compensation).

Thus, if JDE was seeking monetary compensation from the certiorari court, then its voluntary dismissal would not result in a failure to exhaust, as the certiorari court would have been without authority to provide a monetary remedy anyway. Conversely, if JDE was seeking a declaratory judgment reversing the APC's decision, then the certiorari court could have provided a remedy. As such, the dismissal would amount to a failure to exhaust available administrative remedies. We conclude that, at the time it sought certiorari review, JDE was seeking to avoid the dedication provision, not to be compensated for an actual taking.

■ JDE's substantive claim was essentially one for excessive exaction.[5] Exactions are "land-use decisions conditioning approval of development on the dedication of property to public use." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 702, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). In analyzing whether an exaction passes constitutional muster, the United States Supreme Court has applied a two-part test: (1) an "essential nexus" must exist between a legitimate government interest and the exaction; and (2) the exaction must be "roughly propor-

---

4. The County and the APC argue that JDE's claim constitutes a "facial" challenge to the Ordinance and that, as such, JDE is required to demonstrate that no set of circumstances exists under which the Ordinance would be valid. *Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind.1999). However, both on appeal and throughout the proceedings, JDE has consistently characterized its claim as an application challenge; thus, we address it as such.

5. To the extent JDE bases its claims on any actual taking via the APC's approval of its second application, we note that, by filing this application which *included* the dedication, JDE effectively sought permission to develop the land *with* the dedication and thereby agreed to the Ordinance's dedication requirement. Having received APC approval of its second application, it would not have been necessary to seek certiorari review of a favorable decision.

tional" to the impact of the proposed development. *Dolan v. City of Tigard,* 512 U.S. 374, 387–88, 391, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).[6]

Here, JDE sought approval of its first application, in which it proposed to subdivide and develop its property with a fifty-foot setback, not a fifty-foot dedicated right-of-way. Thus, it sought to *avoid* the dedication requirement altogether. At this point, JDE filed its petition for certiorari review. At oral argument, JDE admitted that an actual, compensable taking did not occur until its second application was approved. Therefore, at the time it sought certiorari review, JDE cannot properly be said to have been seeking compensation. As such, certiorari review would not have been futile. Had JDE fully pursued its certiorari action, the certiorari court could have taken evidence to supplement the record submitted and entered a declaratory judgment affirming, reversing, or modifying the APC's decision. Moreover, two of the available statutory remedies—reversal or modification of the APC's decision—could have obviated the filing of an inverse condemnation action in the first place.[7]

 In sum, when the APC denied JDE's first plat application on the basis that the fifty-foot strip was not dedicated, JDE had a potential *Dolan* claim for excessive exaction and not a claim for an actual, uncompensated taking.[8] However, JDE never went before the certiorari court to attempt to *establish* an excessive exaction.[9] Instead, it sought approval of a second application in which it included the

---

**6.** In *Dolan,* the government's act of conditioning the landowner's permit to expand her retail store and parking lot upon her dedication of a portion of her property as a greenway for a bicycle/pedestrian path was deemed an unconstitutional exaction. In *Dolan,* the court determined that unless the essential nexus and rough proportionality tests were met, the government could not, without paying the compensation otherwise required to effect such a taking, demand dedication of property as a condition for granting a development permit. *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 546–47, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) (citations omitted). In addressing whether an essential nexus exists between an exaction and a legitimate government interest, the *Dolan* court stated that "[d]edications for streets, sidewalks, and other public ways are generally reasonable exactions to avoid excessive congestion from a proposed property use." 512 U.S. at 395, 114 S.Ct. 2309. After establishing essential nexus, the municipality must determine whether the exaction is roughly proportional to the impact of the proposed development. *Id.* at 391, 114 S.Ct. 2309. In determining rough proportionality, the municipality "must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id.*

**7.** JDE also claims that its letter requesting modification of the Thoroughfare Plan constituted a final attempt to gain an administrative resolution. Appellant's App. at 155; *see also id.* at 93 (Thoroughfare Plan, § 5, stating that person desiring modification of Ordinance must file request with Warrick County Commissioners). We note, however, that JDE did not even wait for a response from the County before it voluntarily dismissed the certiorari action and submitted a second application for plat approval, which included the fifty-foot dedication as required by the Ordinance.

**8.** *Cf. Goss v. City of Little Rock,* 90 F.3d 306, 310 (8th Cir.1996) (reversing trial court's dismissal of landowner's exaction case where record was too sparse to permit inquiry into whether city's action in conditioning rezoning on dedication of strip of property met essential nexus and rough proportionality tests).

**9.** As discussed *supra,* the United States Supreme Court's decision in *Dolan* indicates that JDE may have had a legitimate claim that the dedication requirement amounted to an excessive exaction. 512 U.S. at 395, 114 S.Ct. 2309. Curiously, however, instead of establishing this in the certiorari action, as the petitioner did in *Dolan,* JDE dismissed the action.

very dedication it now claims to constitute an unconstitutional taking. "[T]he exhaustion requirement generally refers to *administrative and judicial* procedures by which an injured party may seek review of an adverse decision and *obtain a remedy* if the decision is found to be unlawful or otherwise inappropriate." *Williamson County*, 473 U.S. at 193, 105 S.Ct. 3108 (emphases added). Therefore, in failing to fully pursue the judicial review remedy available in the certiorari court, JDE failed to exhaust its available administrative remedies.[10] As a result, the trial court lacked subject matter jurisdiction to hear JDE's substantive exaction claim. Accordingly, we affirm the trial court's dismissal of JDE's complaint.

Affirmed.

DARDEN, J., and BROWN, J., concur.

---

**10.** To the extent JDE argues that it filed the second application solely as a practical matter to avoid increased construction costs, we note that businesses are often compelled to make economically expedient decisions for which the law makes no provision.