

FILED

May 06 2019, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Neal F. Eggeson, Jr.
Fishers, Indiana

ATTORNEYS FOR APPELLEES

A. Richard M. Blaiklock
Wade D. Fulford
Lewis Wagner, LLP
Indianapolis, Indiana

Michael A. Sarafin
Johnson & Bell, P.C.
Crown Point, Indiana

Sharon L. Stanzione
Alan M. Kus
Johnson & Bell, P.C.
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

G.F.,

*Appellant-Plaintiff,*

v.

St. Catherine Hospital, Inc.,
Vatsal K. Patel, D.O., and
Indiana Patient's Compensation
Fund,

*Appellees-Defendants.*

May 6, 2019

Court of Appeals Case No.
18A-PL-2460

Appeal from the Marion Superior
Court

The Honorable Timothy Oakes,
Judge

The Honorable Caryl Dill,
Magistrate

Trial Court Cause No.
49D02-1801-PL-614

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, G.F., and Appellee/Cross-Appellant-Defendant, the Indiana Patient's Compensation Fund (the Fund), appeal the trial court's summary judgment in favor of Appellees-Defendants, St. Catherine Hospital, Inc. (St. Catherine), and Vatsal K. Patel, D.O. (Dr. Patel), concluding that, as a matter of law, the Indiana Medical Malpractice Act (MMA) applies to G.F.'s claim against Dr. Patel.

We reverse and remand.

# ISSUES

G.F. and the Fund, in separate briefs, present this court with three issues on appeal, which we consolidate and restate as:

    (1) Whether the trial court erred by allowing St. Catherine and Dr. Patel to file a response to G.F.'s motion for summary judgment outside the time period specified in Indiana Trial Rule 56; and

    (2) Whether the MMA applies to claims involving negligent dissemination of protected health information.

# FACTS AND PROCEDURAL HISTORY

On June 5, 2015, G.F. received in-patient treatment at St. Catherine for pneumonia-related symptoms. While G.F. was being visited by a co-worker, Dr. Patel entered the room. With the co-worker in the room, Dr. Patel informed G.F. that his "CD4 count is low . . . you need to see your infectious

disease doctor as soon as you can!" (Appellant's App. Vol. II, p. 12). Because G.F.'s visitor had a prior family experience with HIV, she immediately understood the implication of Dr. Patel's communication to G.F. As soon as Dr. Patel exited the room, G.F.'s co-worker voiced her understanding of Dr. Patel's statement: as her step-brother had died from HIV/AIDS, she recognized the inferences of discussing CD4 counts with an infectious disease doctor. Four days later, Dr. Patel phoned G.F. to apologize for what he said in front of G.F.'s co-worker. Dr. Patel had assumed the co-worker was G.F.'s fiancée.

[5] As a result of what she learned on June 5, 2015, G.F.'s co-worker has severed all ties with G.F. Though G.F. and his co-worker had been good friends prior to this incident, she now no longer calls or visits G.F., she does not return G.F.'s calls, and she even refuses to acknowledge his existence at work. Suggesting that the word is out at his workplace, G.F. observed that other co-workers now "change their path when they see [G.F.] heading in their directions." (Appellant's App. Vol. II, p. 38).

[6] On August 20, 2015, G.F. filed his Proposed Complaint for medical malpractice against St. Catherine and Dr. Patel with the Indiana Department of Insurance [IDOI], in its capacity of the Fund. Five months later, on January 21, 2016, G.F. filed an anonymous Complaint for damages against St. Catherine and Dr. Patel with the Lake County Circuit Court. On March 4, 2016, St. Catherine and Dr. Patel moved to dismiss the Lake County action for

failing to state a claim upon which relief can be granted. On April 27, 2016, the Lake County Circuit Court denied the motion to dismiss.

[7] On October 19, 2017, the medical review panel rendered a split decision. The panel found no breach of standard of care in favor of St. Catherine. As to Dr. Patel, the panel concluded that G.F.'s allegations hinged upon "a material issue of fact not requiring expert opinion, bearing on liability for consideration by the court or jury." (Appellant's App. Vol. II, pp. 71-73).

[8] On January 6, 2018, G.F. initiated an action for declaratory judgment against St. Catherine, Dr. Patel, and the Fund in Marion County Superior Court, seeking a declaration of law that his claims fell outside the ambit of the MMA. On March 10, 2018, G.F. moved for summary judgment on his declaratory judgment claims, and the Fund joined in the motion on June 1, 2018. St. Catherine and Dr. Patel failed to respond to G.F.'s motion for summary judgment within the time allotted by Indiana Trial Rule 56(C); St. Catherine and Dr. Patel sought leave to respond on April 15, 2018. On April 17, 2018, the trial court permitted the filing of a belated response.

[9] On October 3, 2018, following a hearing, the trial court issued its findings of fact and conclusions thereon, denying G.F.'s motion for declaratory judgment and concluding in pertinent part that:

> [G.F.'s] claim involves health care that was provided by a physician, working in his professional capacity as a provider of medical services, to a patient, within the confines of a hospital, in furtherance and promotion of [G.F.'s] health. Further, the

[c]ourt finds that [G.F.] willfully and voluntarily subjected his claim to the requirements and restrictions outlined within the MMA, proceeded through the entirety of the medical review panel process, and obtained a medical review panel opinion in accordance with the MMA. Thus, because [G.F.] has willingly and voluntarily subjected himself to the MMA the [c]ourt thereby rejects his contention that his claim is not governed by the MMA, finds that it is one of medical malpractice, governed by the requirements and restrictions of the MMA, and thereby DENIES [G.F.'s] [m]otion for [s]ummary [j]udgment in its entirety.

G.F. now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant

of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607.

[12] We observe that, in the present case, the trial court entered findings of fact and conclusions of law thereon in support of its judgment. Generally, special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer a court valuable insight into the trial court's rationale and facilitate appellate review. *Id.*

[13] In analyzing a motion for summary judgment, a court may consider only properly designated evidence. Indiana Trial Rule 56(C) requires each party to a summary judgment motion to designate to the court all parts of pleadings, designations, and other matters on which it relies for purposes of the motion. Because G.F. and the Fund dispute the timeliness of St. Catherine's and Dr. Patel's response to G.F.'s motion for summary judgment, we must first resolve this procedural threshold issue and determine what designated evidence is properly before us prior to turning to the merits of the case.

## II. *Indiana Trial Rule 56*

[14] As an initial matter, G.F. contends that the trial court erred in allowing St. Catherine and Dr. Patel to file a belated response to his motion for summary judgment. Trial Rule 56 states, in pertinent part:

> (C) The motion and any supporting affidavits shall be served in accordance with the provisions of Rule 5. An adverse party shall

have thirty (30) days after service of the motion to serve a
response and any opposing affidavits . . .

****

(F) Should it appear from the affidavits of a party opposing the
motion that he cannot for reasons stated present by affidavit facts
essential to justify his opposition, the court may refuse the
application for judgment or may order a continuance or permit
affidavits to be obtained or depositions to be taken or discovery
to be had or may make such other order as is just.

****

(I) For cause found, the [c]ourt may alter any time limit set forth
in this rule upon motion made within the applicable time limit.

In *HomEq Servicing Corp. v. Baker*, 883 N.E.2d 95, 98-99 (Ind. 2008) (quoting

*Borsuk v. Town of St. John*, 820 N.E.2d 118, 124 n. 5 (Ind. 2005)), our supreme

court clarified the time limits of T.R. 56 and declared that "[w]hen a

nonmoving party fails to respond to a motion for summary judgment within 30

days by either filing a response, requesting a continuance under T.R. 56(I), or

filing an affidavit under T.R. 56(F), the trial court cannot consider summary

judgment filings of that party subsequent to the 30-day period." This is "a

bright-line rule . . . which precludes the late filing of responses in opposition to

a motion for summary judgment." *Mitchell v. 10th & The Bypass, LLC*, 3 N.E.3d

967, 972 (Ind. 2014). "Now firmly entrenched as an article of faith in Indiana

law, this bright-line rule provides clarity and certainty to an area of the law that

for too long lacked both." *Id*.

[15] G.F. filed his motion for summary judgment on March 10, 2018. Accordingly, St. Catherine and Dr. Patel's response or request for additional time was due no later than April 9, 2018. It was not until April 15, 2018, that St. Catherine and Dr. Patel sought leave to respond. As such, pursuant to *HomEq*'s premise, their request should have been denied by the trial court.

[16] Nevertheless, St. Catherine and Dr. Patel now rely on Marion County Local Rule 203(A) to avoid the implementation of the rigid bright-line rule. Marion County Local Rule 203(A) provides that "all motions filed with the court shall include a brief statement indicating whether opposing party(ies) object to or approve of the granting of said motion." LR49-TR5-203(A). Because G.F. failed to indicate in his motion for summary judgment whether St. Catherine and Dr. Patel agreed or objected to the motion, Appellees maintain that his motion was not properly filed until this defect was cured on April 16, 2018. Therefore, St. Catherine and Dr. Patel contend that the 30-day time period to file their response to the summary judgment motion commenced on April 16, 2018 and accordingly, their motion for leave to file a response was timely filed.

[17] The Indiana Trial Rules specifically authorize the making and amending of local rules of court:

> Each local court may from time to time make and amend rules governing its practice not inconsistent with these rules. In all cases not provided for by rule the local court may regulate its practice in any manner not inconsistent with these rules . . .

T.R. 81. However, the rules of procedure promulgated by our supreme court are binding on all Indiana courts, and no court "can circumvent the rules and thereby avoid their application" by promulgating an inconsistent local rule. *Spudich v. Northern Ind. Public Serv., Co.*, 745 N.E.2d 281, 286 (Ind. Ct. App. 2001). A local rule which is inconsistent with the Trial Rules is deemed to be without force and effect. *Armstrong v. Lake*, 447 N.E.2d 1153, 1154 (Ind. Ct. App. 1983).

[18] In *State v. Bridenhager*, 257 N.E.2d 794, 796 (Ind. 1972), our supreme court clarified the test for determining when a procedural rule enacted by statute is inconsistent with the trial rules:

> To be "in conflict" with our rules . . ., it is not necessary that the statutory rules be in direct opposition to our rule, so that but one could stand per se. It is only required that they be incompatible to the extent that both could not apply in a given situation.

In *Armstrong*, this court held that the same test would apply to a local rule alleged to be inconsistent with the trial rules. *Armstrong*, 447 N.E.2d at 1154. Furthermore, when two rules cover the same subject matter and one does so generally whether the other does so specifically, the more specific rule prevails. *Daugherty v. Robinson Farms, Inc.* 858 N.E.2d 192, 197 (Ind. Ct. App. 2006), *trans. denied*.

[19] We recognize that Local Rule 203(A) applies to all motions filed with the Marion County trial court, whereas the requirements of T.R. 56 only apply to summary judgment motions—and therefore is the more specific rule.

Moreover, St. Catherine and Dr. Patel assume that failure to comply with Local Rule 203(A) means that a motion has not been filed or that the filing is exempt from any time requirements until the defect has been cured. However, Local Rule 203(A) does not specify a consequence or penalty and neither does the trial court's chronological case history indicate that G.F.'s motion for summary judgment was not deemed filed for lack of compliance with the Local Rule. While Local Rule 203(A) and T.R. 56(I) are not incompatible *per se*, we find that the more specific T.R. 56(I) takes precedence over Local Rule 203(A) and the 30-day time period to respond to a motion for summary judgment cannot be enlarged or restricted by the application of Local Rule 203(A).[1]

[20] As a result, the trial court abused its discretion by allowing St. Catherine and Dr. Patel to file a belated response to G.F.'s motion for summary judgment and

---

[1] It should be noted that in a further effort to bring their designated evidence in front of the trial court, St. Catherine and Dr. Patel filed a cross-motion for summary judgment on May 2, 2018. However, in its Order of October 3, 2018, the trial court only ruled on G.F.'s motion for summary judgment and declared "the cross-motion for summary judgment filed by [Dr. Patel and St. Catherine] [] moot." (Appellants App. Vol. II, p. 11). Dr Patel and St. Catherine do not appeal the trial court's conclusion that their cross-motion for summary judgment is moot. Moreover, even if the cross-motion was properly before us for consideration, our conclusion that St. Catherine and Dr. Patel cannot designate evidence outside the time-period designated in T.R. 56 would not be altered. In *Life v. Tucker Co., Inc.*, 948 N.E.2d 346, 351 (Ind. Ct. App. 2011), Life filed a belated response to Tucker's motion for summary judgment, as well as a motion for partial summary judgment against Tucker which included the same arguments and designated evidence as in the belated response. We concluded that

> [w]hile we certainly acknowledge that Trial Rule 56(a) allows for claimants to move for partial summary judgment "*at any time* after the expiration of twenty days from the commencement of the action or after service of a motion for summary judgment by the adverse party," the Lifes may not be permitted to bypass established rules of trial procedure by cloaking their response in another procedural mechanism. Doing so would render meaningless Trial Rule 56(C)'s time limit of thirty days and allow litigants to respond to summary judgment motions at their leisure so long as they also included their own motion.

*Id*.

designate evidence in support thereof. Accordingly, we will consider only the evidence designated by G.F. and the Fund in reviewing the trial court's summary judgment in favor of St. Catherine and Dr. Patel.

### III. *Application of MMA on Dissemination of Protected Health Information*

Since its enactment in 1975, the MMA has dictated the statutory procedures for medical malpractice actions. *See* I.C. § 34-18-1-1 *et seq.* The MMA is not all-inclusive for claims against healthcare providers, nor is it intended to be extended to cases of ordinary negligence. *Peters v. Cummins Mental Health, Inc.*, 790 N.E.2d 572, 576 (Ind. Ct. App. 2003). Instead, the MMA was designed to curtail, not expand, liability for medical malpractice. *Atterholt v. Herbst*, 902 N.E.2d 220, 223 (Ind. 2009). As such, the MMA is in derogation of common law and should be narrowly construed. *Patel v. Barker*, 742 N.E.2d 29, 31 (Ind. Ct. App. 2001).

Similar to other statutes in derogation of the common law, the MMA is to be strictly construed against imposing any limitations upon a claimant's right to bring suit. *Peters*, 790 N.E.2d at 576. When the legislature enacts a statute in derogation of the common law, courts presume that the legislature is aware of the common law, and that the legislature does not intend to make any change beyond what is declared in express terms or by unmistakable implication. *Weldon v. Universal Reagents, Inc.*, 714 N.E.2d 1104, 1107-08 (Ind. Ct. App. 1999).

By limiting provider liability, the MMA makes healthcare more affordable and accessible to patients throughout Indiana. *McCarty v. Sanders*, 805 N.E.2d 894, 899 (Ind. Ct. App. 2004). "The obvious purpose of the [MMA] was to protect health care providers from malpractice claims . . . not to create new and additional causes of action. Were it to create a separate cause of action it would increase the incidence of such claims rather than protect against them." *Breece v. Lugo*, 800 N.E.2d 224, 227-28 (Ind. Ct. App. 2003). In *Johnson v. St. Vincent Hospital, Inc.*, 404 N.E.2d 585, 589 (Ind. 1980), *overruled on different grounds by In re Stephens*, 867 N.E.2d 148 (Ind. 2007), our supreme court noted that the MMA was a legislative response to escalating problems in the medical malpractice insurance industry and was passed to address the rapidly escalating costs to physicians of malpractice insurance, the near unavailability of such coverage to physicians engaged in certain high risk specialties, and because "[h]ealth care providers had become fearful of the exposure to malpractice claims and at the same time were unable to obtain adequate malpractice insurance at reasonable prices." *Id*. at 589. The MMA created "voluntary state-sponsored liability insurance for doctors and other health care providers, created a patient compensation fund, took measures to prevent injuries to patients through the negligence of health care providers, and subjected negligence claims against health care providers to special controls limiting patient remedies." *Id*. at 590. Whether the case is one of medical malpractice as defined by the MMA is a question of law to be determined by the court. *Weldon*, 714 N.E.2d at 1107.

[24] Indiana courts have developed an analytical framework for determining whether the MMA applies to a certain claim. Courts look to the substance of a claim, not the manner in which the conduct is framed in a pleading by the claimant. *Doe by Roe v. Madison Ctr. Hosp.*, 652 N.E.2d 101, 104 (Ind. Ct. App. 1995). To fall within the purview of the MMA, a provider's conduct must be undertaken in the interest of, or for the benefit of, the patient's health. In other words, the conduct must be "curative or salutary in nature or effect" for the person claiming patient status under the MMA. *Collins v. Thakkar*, 552 N.E.2d 507, 510 (Ind. Ct. App. 1990). The curative or salutary conduct must be directed toward the person to whom the provider owes a duty of care. *See Peters*, 790 N.E.2d at 577. Conversely, the MMA does not apply to conduct "unrelated to the promotion of a patient's health or the provider's exercise of profession expertise, skill, or judgment." *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 185 (Ind. 2011).

[25] Given the limiting language of the MMA, not every negligent act or omission by a health care provider constitutes medical malpractice. *Putnam Co. Hosp. v. Sells*, 619 N.E.2d 968, 970 (Ind. Ct. App. 1993). A medical malpractice claim under the Act exists only when the substance of the claim involves a causal connection between the negligence and the nature of the provider/patient relationship. *Doe by Roe*, 652 N.E.2d at 103. General negligence can occur during the course of ongoing medical treatment if the negligent act itself does not involve curative or salutary conduct, the promotion of the patient's health, or the exercise of professional expertise, skill, or judgment. *See, e.g., Thomas v.*

*Deitsch*, 743 N.E.2d 1218, 1220-21 (Ind. Ct. App. 2001) (no medical malpractice where doctor allowed inebriated patient to leave office and patient was arrested on way home from doctor's office for operating while inebriated); *Hart v. Caylor-Nickel Hosp. Inc.*, 553 N.E.2d 874, 879 (Ind. Ct. App. 1990) (allegation that a bed rail properly raised by health care provider, but which gave way under plaintiff's weight after turning himself in bed was outside the MMA); *Collins v. Thakkar*, 552 N.E.2d 507, 510-11 (Ind. Ct. App. 1990), *trans. denied* (no medical malpractice where a doctor performed an abortion on a patient without her consent). Recently, this court addressed the difference between ordinary negligence and medical malpractice which would fall under the purview of the MMA, as follows:

> A case sounds in ordinary negligence [rather than medical negligence] where the factual issues are capable of resolution by a jury without application of the standard of care prevalent in the local medical community. By contrast a claim falls under the [MMA] where there is a causal connection between the conduct complained of and the nature of the patient-health care provider relationship.

*Metz as Next Friend of Metz v. Saint Joseph Reg'l Med. Center-Plymouth Campus, Inc.*, 115 N.E.3d 489, 495 (Ind. Ct. App. 2018) (*quoting Terry v. Cmty. Health Network, Inc.*, 17 N.E.3d 389, 393 (Ind. Ct. App. 2014)) (internal citations omitted).

[26] Relying on this framework, G.F. and the Fund contend that the trial court erred when it concluded that G.F.'s claim against Dr. Patel fell within the purview of the MMA. G.F. does not contend that the statement by Dr. Patel led to an

inaccurate diagnosis, improper treatment, or bodily injury; rather, G.F. claims that the communication resulted in emotional harm and an irreparable loss of privacy. Characterizing Dr. Patel's disclosure of G.F.'s confidential health care information to a third party as neither curative nor salutary to G.F., G.F. and the Fund maintain that the claim against Dr. Patel sounds in ordinary negligence. In response, St. Catherine and Dr. Patel assert that Dr. Patel's communication of laboratory results to G.F., as well as the recommendation of follow-up care, were directly related to tests performed in furtherance of G.F.'s care and treatment and occurred while Dr. Patel was acting in his professional capacity. As such, they posit that Dr. Patel's conduct falls squarely within the purview of the MMA.

[27] In a previous case, we have held that claims alleging negligent dissemination or communication of patients' confidential health information against a heath care provider were not governed by the MMA. In *H.D. v. BHC Meadows Hosp., Inc.*, 884 N.E.2d 849, 851-52 (Ind. Cr. App. 2008), *reh'g denied, trans. denied*, a therapist at an in-patient psychiatric facility faxed the plaintiff's diagnosis and the fact of her hospitalization to the plaintiff's high school where the fax was viewed by school administrators and students, even though the plaintiff's parents and the defendant had signed a confidentiality agreement that the information of plaintiff's treatment was not to be disclosed to her school counselor. After the plaintiff filed suit for negligence and invasion of privacy, the hospital moved to dismiss the case on the grounds that plaintiff had omitted to present her claims to a medical panel. *Id.* at 852. Following the trial court's

dismissal of the lawsuit because it was not brought under the MMA, the court of appeals unanimously reversed the trial court. *Id*. at 852. Framing the question as "whether a health care provider's negligent or reckless dissemination of a patient's confidential information to members of the general public comes within the purview of the [MMA]," this court analyzed the language of the MMA discussing whether each of three separate communications from the therapist to the plaintiff's school counselor was sent for the purpose of providing health care or professional services for the patient. *Id*. Discarding two communications as being surveys which had not been sent for the purpose of healthcare or providing services and therefore could not constitute medical malpractice, the court of appeals determined that a third faxed communication had been sent for the "dual purpose of providing health care or professional services." *Id*. at 854. This particular message, sent by the therapist to the school counselor and faxed to a machine located in the general secretarial pool in the main office, read as follows:

> Thanks for referral. Addressing issues of depressional stress.
> Doing well, withdrawn and anxious @ times. Please call @ . . .
> to discuss issues.
> Thanks again.

*Id*. at 851-52.

[28] Starting our analysis from BHC Meadows Hospital's argument, we reasoned as follows:

> [The Hospital] argues that "[t]he reasonableness of [the
> t]herapist's decision to communicate with [the school c]ounselor

and share confidential information during the course of [the t]herapist's treatment constitutes the quintessential exercise of judgment in rendering professional services in caring for [plaintiff] and her serious, suicidal ideation." We would agree with this statement on its face; however, what has been represented by [the plaintiffs] is much more than a confidential communication between a therapist and a counselor. It is undisputed that the therapist sent private, confidential information to the fax machine of a high school without knowing who had access to the machine. Indeed, we have doubts as to whether the [plaintiffs] would have experienced any injury had the therapist directly and privately communicated with H.D.'s school counselor who was already aware of her suicide note, although such communication would still have been in contravention of the [plaintiffs'] explicit wishes. For this reason, we conclude that the more appropriate question to answer is whether a health care provider's negligent or reckless dissemination of a patient's confidential information to members of the general public comes within the purview of the [MMA].

*Id*. at 854. Next, we concluded that the primary purpose of the MMA was to address difficulties health care providers were experiencing in obtaining professional liability insurance coverage. Nevertheless, we noted that the general claim asserted by the plaintiffs sounded in common law negligence and the purpose of the MMA would not be served by extending its provisions to the claim under consideration. *Id*. at 855. Accordingly, the court concluded that "the [plaintiffs] have articulated claims of ordinary negligence and similar claims; we are particularly persuaded that an average juror is well equipped to consider those claims." *Id*. at 856.

[29] A more recent case from the Northern District of the United States District Court, interpreting Indiana's MMA, reached a similar result. In *Reed v. Rodarte*, 2013 WL 594107 (N.D. Ind. 2013), Reed was injured during his employment. Rodarte—wrongly—diagnosed Reed with a sexually transmitted disease and informed Reed's employer that this was not a work-related injury. *Id.* In filing his Complaint, Reed focused on the perceived violation of his privacy rights under HIPAA, state privacy laws, and state defamation laws. *Id.* Rodarte moved for a dismissal of the Complaint, alleging that the claim fell within the MMA. *Id.* The federal court reviewed the provisions of the Act, and Indiana case law pertaining to the issue of the scope of coverage, acknowledging that the MMA "extends to seemingly administrative tasks that are intricately related to patient care" because "the skillful, accurate, and ongoing maintenance of test and treatment records bears strongly on subsequent treatment and diagnosis of patients." *Id.* (quoting *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 186 (Ind. 2011)). However, "Indiana courts have declined to extend the [MMA] to cover lawsuits stemming from unauthorized communications by a health care provider to third parties regarding the patients' medical conditions." *Id.* Relying on *BHC Meadows Hospital*, the federal court reasoned that "[u]nlike memorializing medical observations in a chart or authorizing a patient's commitment, sharing a patient's medical condition with a third party requires no 'professional expertise, skill or judgment.'" *Id.* (quoting *Collins*, 552 N.E.2d at 510).

[30] Turning to the case at hand, G.F. does not contend that Dr. Patel's statement led to an inaccurate diagnosis or improper treatment. Rather, in his Complaint, G.F. articulated his claims as to "whether the [MMA] applies to claims involving: the violation of a patient's medical confidentiality; [and] the negligent or intentional disclosure of protected health information[.]" (Appellant's App. Vol. II, p. 24). The fact that Dr. Patel's statement was uttered in a facility that provides health care does not, by itself, make G.F.'s claim fall within the purview of the MMA. *Doe ex rel. Roe*, 652 N.E.2d at 104. Nor does the fact that G.F. was a patient of Dr. Patel create such a claim. *Collins*, 552 N.E.2d at 511. Instead, the test is based on the provider's behavior or practices while "acting in his professional capacity as a provider of medical services." *Id*. at 510. Based on these parameters, we cannot conclude that G.F.'s claims are within the boundaries of the MMA.

[31] As in *BHC Meadows Hospital*, where the confidential information was directed at the school counselor, but instead was read by the secretarial and administrative staff of the school; likewise, here, the communication by Dr. Patel had the dual effect of providing medical information to G.F., while at the same time, an inadvertent broadcast disclosed confidential information to the visitor, a third party. It is this disclosure of confidential information that is the focus of G.F.'s claim; not the services provided by Dr. Patel. At no point did the broadcast of confidential information to the third party constitute a health care treatment to G.F., nor did Dr. Patel's statement of G.F.'s HIV status to a third party have a curative or salutary effect on G.F. Furthermore, as in *BHC Meadows Hospital*

and *Rodarte*, we do not determine expert testimony to be necessary as "an average juror is equally equipped" to consider the elements of a state law privacy claim. *See BHC Meadows Hospital*, 884 N.E.2d at 856. Accordingly, G.F.'s Complaint, as it pertains to the negligent or intentional disclosure of protected health information, is not subject to the limitations of the MMA.

[32] St. Catherine and Dr. Patel now maintain that, because G.F. filed his case both by a proposed complaint for medical malpractice with the IDOI, and also by an anonymous Complaint for damages in the Lake County Circuit Court, he thereby elected to file his case as a medical malpractice claim and should not now be permitted to argue that it is not governed by the MMA. Relying on *Cmty Hospitals of Ind., Inc., v. Aspen Ins. UK Ltd*, 113 N.E.3d 636 (Ind. Ct. App. 2018), they contend that G.F. is estopped from arguing his case should proceed pursuant to ordinary negligence principles.

[33] In *Aspen*, this court interpreted our supreme court opinion in *Manley v. Sherer*, 992 N.E.2d 670 (Ind. 2013), and concluded that once plaintiffs have filed a proposed complaint with the Department of Insurance and received an unfavorable opinion of the medical panel, they no longer can contend that the MMA is not applicable to their claim. *Aspen*, 113 N.E.3d at 644. In *Manley*, the plaintiff was injured in a head on collision with Zehr, who had lost consciousness while driving due to medications prescribed by her physician, Dr. Sherer. *Manley*, 992 N.E.2d at 672. In evaluating the parties' respective summary judgment arguments, our supreme court mentioned that the Manleys "filed their proposed complaint with the [IDOI] but at no time did they ever file

their complaint in court." *Id.* at 673. It also observed that the Manleys, in their opposition to Sherer's summary judgment motion, had argued that their claims were not subject to the MMA because Manley was not a patient of Sherer and thus her claim was not for medical malpractice subject to the special occurrence-based statute of limitation. *Id*. at 674. Before addressing the merits of the statute of limitations issue, the supreme court stated,

> We preliminarily reject the plaintiffs' claim that their action against Dr. Sherer and his medical group is not governed by the [MMA]. The plaintiffs have treated it otherwise by filing their proposed complaint with the [IDOI] as required by the [MMA]. They may not now contend the [MMA] and its time limitation do not apply to their claim.

*Id*.

[34]   We find the interpretation of *Manley* by this court in *Preferred Prof'l Ins. Co. v. West*, 23 N.E.3d 716 (Ind. Ct. App. 2014), *trans. denied*, to be more persuasive. In *West*, we considered the supreme court's "remarks to be a comment particular to the facts and circumstances of the *Manley* case, not a statement of law." *Id* at 732. The *West* court reasoned that

> We do not find that the West's decision to simultaneously file complaints in the St. Joseph Circuit Court and the IDOI, likely done to avoid any potential statute of limitations issues, is problematic or that it thereby prevented them from pursuing a determination that the MMS did not apply to their claims. [The Fund] is in agreement, stating that plaintiffs, meaning the Wests or any others, may not decide that a case is one of medical malpractice simply by filing it as such, as that determination is

for the courts to make. As we have recognized, it is the substance of a claim, not its caption, which determined whether compliance with the MMA is necessary.

*Id*. The *West* court's interpretation of *Manley* is more in line with current precedents, in which a court determines whether the case is one of medical malpractice as defined by the MMA as a question of law by looking at the substance of the parties' claims. *Weldon*, 714 N.E.2d at 1107; *Doe by Roe,* 652 N.E.2d at 104. *See also Fairbanks Hosp. v. Harrold*, 895 N.E.2d 732, 738 (Ind. Ct. App. 2008), *trans. denied*, (after medical panel found for plaintiff, court of appeals affirmed the trial court's determination that the MMA did not cover Harrold's claims). Accordingly, we conclude that G.F. was not estopped from pursuing a determination that the MMA did not apply to his claims.

[35] We reverse the trial court's conclusion that G.F.'s allegations constitute claims of medical malpractice subject to the applicability of the MMA. Therefore, its summary judgment in favor of St. Catherine and Dr. Patel was clearly erroneous. We remand for further proceedings in accordance with this opinion.

## CONCLUSION

[36] Based on the foregoing, we hold that the trial court erred by allowing St. Catherine and Dr. Patel to file a response to G.F.'s motion for summary judgment outside the time period specified in Indiana Trial Rule 56. We also hold that the MMA is not applicable to claims involving negligent dissemination of protected health information and thus the trial court erred in granting summary judgment to St. Catherine and Dr. Patel.

Reversed and remanded for further proceedings.

Bailey, J. and Pyle, J. concur