

FILED

Jan 23 2025, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Shantel Waggoner, Individually and as Executrix of the Estate of Elmer Gordon Waggoner,

*Appellant-Respondent,*

v.

Anonymous Healthcare System, Inc., et al.,

*Appellees-Petitioners.*

---

January 23, 2025

Court of Appeals Case No.
24A-CT-469

Appeal from the
Vanderburgh Superior Court

The Honorable
Leslie C. Shively, Judge

Trial Court Cause No.
82D01-2308-CT-3727

**Opinion by Senior Judge Baker**
Judges Pyle and Felix concur.

**Baker, Senior Judge.**

# Statement of the Case

[1] Elmer Waggoner ("Elmer") caught COVID-19 and was placed in several hospitals to treat his severe symptoms. During hospitalization, he developed a pressure wound, also known as a bed sore, in his lower back. The wound resisted treatment and turned septic, leading to Elmer's death.

[2] Shantel Waggoner ("Waggoner"), acting as both the mother of Elmer's dependent children and as the executrix of Elmer's estate, filed a proposed complaint with the Indiana Department of Insurance ("IDI"). She alleged that over eighty proposed defendants, including hospitals and doctors, had committed medical malpractice while treating Elmer's wound.

[3] The defendants, including Anonymous Healthcare System, Inc. (collectively, "AHS"), petitioned the trial court to determine a preliminary question of law and moved for summary judgment. AHS argued it was statutorily immune from liability because: (1) it provided medical care to Elmer during a COVID-19 emergency; and (2) Elmer ultimately died while hospitalized from a complication derived from COVID. The trial court granted summary judgment for all defendants and ordered the dismissal of Waggoner's complaint.

[4] On appeal, Waggoner argues the trial court erred in addressing issues that should be reserved for a medical review panel's determination. Concluding that she is correct, we reverse and remand with instructions.

## Facts and Procedural History

[5] On March 6, 2020, Governor Eric Holcomb issued Executive Order 20-02, declaring a state public health emergency for the COVID-19 pandemic. He extended the duration of the emergency several times. On March 17, 2020, the Secretary of the United States Department of Health and Human Services ("HHS") issued a declaration identifying the COVID-19 pandemic as a federal public health emergency. HHS renewed its declaration several times.

[6] In January 2022, while the state and federal emergency declarations were still in effect, Elmer arrived at a hospital in Kentucky, five days after testing positive for COVID. His symptoms included aches, a deep dry cough, and "SEVERE COVID PNEUMONITIS[.]" Appellant's App. Conf. Vol. III, p. 157. He was transferred to a second Kentucky hospital due to the severe nature of his symptoms. Elmer's condition continued to worsen.

[7] On January 27, he was transferred to Anonymous Hospital 1 ("Hospital 1") in Indiana. Elmer needed critical pulmonary care for conditions including respiratory failure and "pneumonia due to COVID-19 virus." *Id.* at 14. When he arrived at Hospital 1, he was sedated, medically paralyzed and on a ventilator. Elmer remained prone on a ventilator for an extended period of time. He received treatment from various doctors and therapists. On February

5, the treatment team removed Elmer's breathing tube from his throat and replaced it with oxygen supplied via a nasal tube, but he was again intubated on February 9 due to worsening pulmonary symptoms.

[8] On February 9, Elmer's treatment team noted he had developed a pressure wound, also known as a bed sore, on his lower back. A health care provider noted the wound contained necrotic tissue but displayed no obvious signs of infection. On February 16, 2022, the wound appeared as follows:



Appellant's App. Vol. III, p. 174.

[9] On March 3, 2022, Elmer was transferred to Anonymous Hospital 3 ("Hospital 3") for further treatment. He remained on a ventilator, but he tested negative for COVID-19. That same day, Governor Holcomb rescinded the COVID-19 state of emergency. Elmer's pressure wound continued to worsen, becoming

sixteen centimeters long and twenty centimeters wide. It also showed signs of infection. His treatment team provided wound care. On March 17, 2022, Elmer was transferred back to Hospital 1, still on a ventilator. His wound appeared as follows:



Appellant's App. Vol. II, p. 235.

[10] On March 29, 2022, Elmer died at Hospital 1. His death certificate listed his cause of death as cardiopulmonary arrest. The following conditions sequentially led to the arrest: acute hypoxic and hypercapnic respiratory failure, sepsis, and necrotizing fasciitis. His wound had grown, spreading across his lower back:



Appellant's App. Vol. III, p. 96.

In May 2023, the federal government rescinded its declaration of a public health emergency for COVID-19.

Meanwhile, in March 2023, Waggoner filed a proposed complaint with the IDI. She named as defendants a hospital system, several hospitals, over fifty doctors, and various physical and occupational therapists. She alleged the defendants' treatment of Elmer's pressure wound was "negligent and below the appropriate standard of care." Appellant's App. Conf. Vol. II, p. 76. In July 2023, a physician requested the formation of a medical review panel.

In August 2023, before the panel could be established, some defendants filed with the trial court a Petition for Preliminary Determination and Motion for Summary Judgment ("the Petition"). All other defendants joined in the Petition. Waggoner moved to dismiss or stay the Petition, claiming the trial court lacked jurisdiction to address AHS's claims. Each side also filed motions to strike, alleging defects in the designation or authentication of summary judgment exhibits.

The trial court held a hearing on the Petition and the motion to dismiss. The court later issued an order determining AHS is immune from liability for medical malpractice under state and federal statutes. Accordingly, the court granted AHS's motion for summary judgment and ordered Waggoner's complaint dismissed with prejudice as to all defendants. The court did not rule on the parties' cross-motions to strike. This appeal followed.

## Issue

Waggoner raises five issues, of which one is dispositive: whether the trial court erred in granting summary judgment to AHS on its claim of statutory immunity.

## Discussion and Decision

"We review the trial court's summary judgment decision de novo." *Z.D. v. Cmty. Health Network*, 217 N.E.3d 527, 531 (Ind. 2023). A movant is entitled to summary judgment if "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Ind. Trial Rule 56(C). "We draw all reasonable inferences in favor of the nonmoving party[.]" *Wilkes v. Celadon Grp., Inc.*, 177 N.E.3d 786, 789 (Ind. 2021).

[17] Indiana's Medical Malpractice Act was intended "to prevent 'the reduction of health care services available to the public' that resulted from 'increased malpractice claims and the difficulty in obtaining malpractice insurance.'" *Lake Imaging, LLC v. Franciscan All., Inc.*, 182 N.E.3d 203, 209 (Ind. 2022) (quoting *Havens v. Ritchey*, 582 N.E.2d 792, 794 (Ind. 1991)). The MMA is in derogation of the common law and "is to be strictly construed against imposing any limitations upon a claimant's right to bring suit." *G.F. v. St. Catherine Hosp., Inc.*, 124 N.E.3d 76, 84 (Ind. Ct. App. 2019), *trans. denied*.

[18] The elements of a medical malpractice claim are "'(1) that the physician owed a duty to the plaintiff; (2) that the physician breached that duty; and (3) that the breach proximately caused the plaintiff's injuries.'" *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016) (quoting *Mayhue v. Sparkman*, 653 N.E.2d 1384, 1386 (Ind. 1995)). Before a plaintiff may file suit against a health care provider alleging medical malpractice, the plaintiff must submit a proposed complaint to a medical review panel and the panel must give its opinion. Ind. Code § 34-18-8-4 (1998). After a plaintiff files a proposed complaint, but before the panel issues its opinion, a party may, in limited circumstances, file a motion with a trial court to decide a preliminary issue. Ind. Code § 34-18-11-1(a) (1998). The court may perform one or both of two tasks: "determine an affirmative defense or issue of law or fact that may be preliminarily determined

under the Indiana Rules of Procedure; or . . . compel discovery in accordance with the Indiana Rules of Procedure." *Id.* Even so, a court "has no jurisdiction to rule preliminarily upon any affirmative defense or issue of law or fact reserved for written opinion by the medical review panel[.]" I.C. § 34-18-11-1(b). The issues reserved for the panel under Indiana Code section 34-18-11-1(b) are as follows:

> (1) The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.
>
> (2) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.
>
> * * * *
>
> (4) The conduct complained of was or was not a factor of the resultant damages. If so, whether the plaintiff suffered:
>
> (A) any disability and the extent and duration of the disability; and
>
> (B) any permanent impairment and the percentage of the impairment.

Ind. Code § 34-18-10-22(b) (1998). As a result, "[a] trial court's authority to rule on preliminary matters is to be narrowly construed." *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 191 (Ind. 2011).

[19] Waggoner argues the trial court erred in determining AHS was immune from liability. She claims immunity hinges on an issue reserved for the medical review panel, specifically causation. That is, Waggoner claims Elmer's pressure

wound and his subsequent death were caused not by COVID-19 or AHS's treatment of his COVID-19 symptoms but by the negligence of some or all of the defendants in preventing and treating the pressure wound. She concludes the question of immunity cannot be decided until the panel decides the causation issue.

[20] AHS disagrees, citing three statutes that purportedly grant immunity to the defendants. We will address each in turn, keeping in mind the following principles of statutory interpretation. When we apply a statute to the facts of a case, "[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense." Ind. Code § 1-1-4-1(1) (1991). Our primary goal is to determine and follow the legislature's intent. *Lake Imaging*, 182 N.E.3d at 207. The best evidence of this intent is the statutory language itself, and we strive to apply the plain and ordinary meaning of the language "'in a logical manner consistent with the statute's underlying policy and goals.'" *Id.* (quoting *Cubel v. Cubel*, 876 N.E.2d 1117, 1120 (Ind. 2007)). Finally:

> [I]mmunity from tort liability is not favored in the law since it bars an injured person from the recovery of compensatory damages against the party who is otherwise responsible for the injury. Thus, statutes which grant privilege or immunity from tort liability must be strictly construed and not extended beyond their plain meaning.

86 C.J.S. Torts § 29 (2017).

## 1. Providing Health Care Services During a State Disaster Emergency

The first statute cited by AHS provides, in relevant part:

> [D]uring a period of a state disaster emergency declared under IC 10-14-3-12 to respond to COVID-19, if the state of disaster emergency was declared after February 29, 2020, and before April 1, 2022 . . . the following apply to the provision of health care services arising from a state disaster emergency declared under IC 10-14-3-12 to respond to COVID-19:
>
> (1) A person providing health care services or emergency medical services, whether in person or through telemedicine services permitted by IC 25-1-9.5, at a facility or other location where health care services or emergency medical services are provided may not be held civilly liable for an act or omission relating to the provision or delay of health care services or emergency medical services arising from a state disaster emergency declared under IC 10-14-3-12 to respond to COVID-19.
>
> (2) An employer, including an agency that provides or arranges health care services or emergency medical services, of a person described in subdivision (1) may not be held civilly liable for an act or omission relating to the provision or delay of health care services or emergency medical services arising from a state disaster emergency declared under IC 10-14-3-12 to respond to COVID-19.

Ind. Code § 34-30-13.5-1(b) (2021).

AHS argues that any acts or omissions that may have fallen below the accepted standard of care and proximately caused Elmer's injury or death were related to "the provision or delay of health care services or emergency medical services" arising from Governor Holcomb's declaration of a COVID emergency. As a result, AHS claims immunity from Waggoner's suit. We disagree.

The question of whether all or some of the defendants' provision of services to Elmer for his pressure wound "arose" out of the state disaster emergency hinges upon causation, a matter for the medical review panel to decide. To be sure, Elmer was originally hospitalized for COVID-19, and he first developed the wound while prone and ventilated to treat his COVID-19 symptoms, but Waggoner submitted an expert's opinion stating that Elmer's death was caused by inadequate treatment of the pressure wound, not by his COVID-19 symptoms. "[I]n medical malpractice cases, expert opinions which conflict on ultimate issues necessarily defeat summary judgment." *Siner*, 51 N.E.3d at 1190.

Further, the plain language of Indiana Code section 34-30-13.5-1(b) provides that it applies only during a period when a state disaster emergency is in effect. There is no dispute that the Governor rescinded the declaration while Elmer was receiving treatment. Any acts of medical malpractice that occurred after that date would not be immunized by Indiana Code section 34-30-13.5-1(b).

AHS cites *Fluhr v. Anonymous Dr. 1*, 234 N.E.3d 912, 918 (Ind. Ct. App. 2024), *trans. denied*, a case in which the Court determined Indiana Code section 34-30-13.5-1 applied to immunize the defendants from the plaintiff's medical malpractice claim. *Fluhr* is distinguishable. In that case, the victim presented at a hospital with symptoms of a stroke, but the hospital's need to follow policies to minimize the spread of COVID-19 prevented a full physical examination that might have confirmed the stroke sooner. The hospital personnel's application of COVID-19 containment procedures fell under the immunity granted by

Section 34-30-13.5-1. But in the current case, Waggoner provides expert witness evidence that states AHS's mistreatment of the bed sore caused Elmer's death, regardless of his prior COVID diagnosis and symptoms. Indiana Code section 34-30-13.5-1(b) does not bar Waggoner's claims pending the medical review panel's determination of causation.

## 2. Premises Immunity

[26] The second statute cited by AHS provides:

> Subject to the other provisions of this chapter, a person is immune from civil tort liability for damages arising from COVID-19:
>
> (1) on the premises owned or operated by the person;
>
> (2) on any premises on which the person or an employee or agent of the person provided property or services to another person; or
>
> (3) during an activity managed, organized, or sponsored by the person.

Ind. Code § 34-30-32-6 (2021).

[27] The General Assembly has defined "arising from COVID-19" as meaning, in relevant part, "an injury or harm caused by or resulting from . . . services, treatment, or other actions performed for COVID-19." Ind. Code § 34-30-32-2 (2021). The grant of immunity in Section 34-30-32-6 "applies to a cause of action that accrues on or after March 1, 2020." Ind. Code § 34-30-32-1(b) (2021). Section 34-30-32-6 expired on December 31, 2024. Ind. Code § 34-30-32-11 (2021).

Here, the key part of Indiana Code section 34-30-32-6 is the word "arising." Indiana Code section 34-30-13.5-1(b) also uses "arising," and in both statutes it implicates causation: what caused Elmer's pressure wound to develop, and what actions or inactions caused the sore to end Elmer's life? Based on the conflicting evidence presented by the parties, and being mindful of our duty to narrowly read statutory grants of immunity against the right to sue for compensatory damages, we conclude the question of causation should be left to the medical review panel.

## 3. Federal Law – Covered Countermeasures

Finally, AHS cites a federal statute, from an act commonly known as the PREP Act:

> Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.

42 U.S.C. Section 247d-6d(a)(1) (2020).

The declaration referred to in the statute is a declaration of a public health emergency by the Secretary of HHS. 42 U.S.C. § 247d-6d(b). A federal public health emergency was in effect before Elmer was transferred to Hospital 1 and remained in effect until after he died. And a "covered countermeasure" is defined in relevant part as:

(C) a drug (as such term is defined in section 201(g)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321(g)(1)),[2] biological product (as such term is defined by section 262(i) of this title), or device (as such term is defined by section 201(h) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 321(h)) that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act; or

(D) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health under part 84 of title 42, Code of Federal Regulations (or any successor regulations), and that the Secretary determines to be a priority for use during a public health emergency declared under section 247d of this title.

*Id.* at 6(d)(i)(1) (footnote omitted).

[31] Elmer was on a ventilator and multiple medications while he was in AHS's care, which would seem to meet the definition of "covered countermeasures." But the question of causation remains a matter to be decided by the medical review panel. The phrase "caused by, arising out of, relating to, or resulting from" explicitly raises causation. We conclude it is too early in the proceedings to determine whether AHS is entitled to immunity under 42 U.S.C. § 247d-6d(b). *See Kluska v. Montefiore St. Luke's Cornwall*, 227 A.D.3d 690, 692 (N.Y. App. Div. 2024) (affirming denial of motion to dismiss under PREP Act; plaintiff patient alleged pressure wounds arose from hospital's failure to follow protocols for wounds, not from being on ventilator, and there was dispute of fact); *Wilhelms v. ProMedica Health Sys., Inc.*, 205 N.E.3d 1159, 1167-68 (Ohio Ct. App. 2023) (reversing dismissal of medical malpractice case under PREP Act; evidence as to causation of pressure wounds was disputed; although

patient was periodically on ventilator when wounds developed), *appeal not allowed*.

[32] Because we reverse the trial court's judgment on the question of statutory immunity, we need not address Waggoner's other claims.

## Conclusion

[33] For the reasons stated above, we reverse the judgment of the trial court and remand with instructions to deny AHS's Petition.

[34] Reversed and remanded with instructions.

Pyle, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT
Arie J. Lipinski
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
ANONYMOUS PHYSICIANS 13, 35, 36, 37, 38, 40, 41, AND 42
Margaret M. Christensen
Moncerrat Z. Alvarez
Dentons Bingham Greenbaum LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
ANONYMOUS PHYSICIANS 18, 20, 22, 28, 31, 48, AND 56,
AND ANONYMOUS SURGERY CENTER 1
Katherine M. Haire
Trenton W. Gill
Reminger Co., LPA
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ANONYMOUS PHYSICIAN 4

Patrick P. Devine
Sam S. Zabeneh
Hinshaw & Culbertson LLP
Schererville, Indiana


ATTORNEYS FOR APPELLEE
ANONYMOUS PHYSICIAN 29

Albert Barclay Wong
Caitlin R. Jared
Drewry Simmons Vornehm, LLP
Carmel, Indiana


ATTORNEYS FOR APPELLEES
ANONYMOUS HOSPITAL 3, ANONYMOUS HOSPITAL 3, LLC, ANONYMOUS
HOSPITAL LLC, ANONYMOUS OCCUPATIONAL THERAPISTS 4 AND 5,
AND ANONYMOUS PHYSICAL THERAPIST 4

Allyson R. Breeden
L. Katherine Boren
Alyssa F. Ricker
Stoll Keenon Ogden, PLLC
Evansville, Indiana


ATTORNEYS FOR APPELLEE
ANONYMOUS PHYSICIAN 51

Mark E. Hammond
Morgan B. Blind
O'Bryan, Brown, & Toner, PLLC
Louisville, Kentucky


ATTORNEYS FOR APPELLEE
ANONYMOUS PHYSICIAN 55

David S. Strite
Nicholas J. Davis
O'Bryan, Brown, & Toner, PLLC
Louisville, Kentucky


ATTORNEY FOR APPELLEES
ANONYMOUS HEALTH SYSTEM, INC.,

ANONYMOUS HOSPITAL 1, ANONYMOUS HOSPITAL 1, INC., D/B/A
ANONYMOUS HOSPITAL, ANONYMOUS PHYSICIAN GROUPS 1, 2, 3, AND 4,
ANONYMOUS HOSPITAL 2, ANONYMOUS HOSPITAL 2, LLC,
ANONYMOUS CLINIC, INC.,
ANONYMOUS PHYSICIANS 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 19, 21,
23, 24, 25, 26, 27, 30, 32, 34, 39, 43, 44, 45, 46, 47, 50, 52, AND 54,
ANONYMOUS PHYSICAL THERAPISTS 1, 2, AND 3,
AND ANONYMOUS OCCUPATIONAL THERAPISTS 1, 2, AND 3

Colleen O. Davis
Thompson Miller & Simpson, PLC
Louisville, Kentucky


ATTORNEY FOR APPELLEE
ANONYMOUS PHYSICIAN 53

Jon M. Pinick
Schultz & Pogue, LLP
Indianapolis, Indiana